IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LAITH SAUD, | |
| Plaintiff, | Case No. 1:17-cv-08825 |
| v. | Honorable Sharon Johnson Coleman |
| MARY K. GARDNER, | |
| Defendant. | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF RULE 12(b)(6) MOTION TO DISMISS COUNT III AND COUNT IV OF PLAINTIFF'S SECOND AMENDED COMPLAINT**

Defendant MARY K. GARDNER ("DR. GARDNER" OR "GARDNER"), by and through her attorneys, hereby submits this memorandum in support of her Motion to Dismiss Count III and Count IV of Plaintiff's Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1367(a).

## INTRODUCTION

This is a tort and civil rights action involving a 604(b) custody evaluation performed by Dr. Gardner, a psychologist, in her capacity as a court-appointed 604(b) evaluator that allegedly contained false claims that resulted in alleged harm to Plaintiff. Dr. Gardner, as a court-appointed psychologist, is absolutely immune from civil liability. Alternatively, even if Dr. Gardner was without immunity, the claims against her for alleged civil rights violations must be dismissed because actions brought pursuant to the Illinois Civil Rights Act of 2003 ("the ICRA") cannot be maintained against individuals and because Dr. Gardner did not act under color of state law in performing her custody evaluation.

## PROCEDURAL HISTORY

On August 4, 2000 Plaintiff Laith Al Saud ("Plaintiff") and his former wife, Zainab Aziz ("Ex-Wife"), entered into an arranged marriage. *See* Plaintiff's Second Amended Complaint,

Exhibit A, ¶ 5. The marriage resulted in the birth of a daughter, Yasmine ("Daughter"), on February 19, 2002. *See id*. While in graduate school, Plaintiff became involved in an extra-marital affair with another woman, which caused Ex-Wife to leave the marital home in 2006. *Id*. at ¶ 6. By 2007, the couple was separated. *Id*. Plaintiff and Ex-Wife officially divorced and entered into a Joint Parenting Agreement (JPA) on February 17, 2009. *Id*. at ¶ 9. The terms of the JPA provide that custody would be shared, with Plaintiff as custodial parent during the school year, and Ex-Wife as custodial parent during the summer, as well as most holidays. *Id*.

Disagreements arose between Plaintiff and Ex-Wife regarding custody, and a Guardian *Ad Litem* (GAL) was assigned to represent Daughter. *Id*. at ¶¶ 10, 14. The GAL recommended maintaining the JPA as it was. *Id*. at ¶ 14. Ex-Wife contested the GAL's findings, and on July 22, 2011, the court appointed licensed psychologist, Defendant Dr. Mary K. Gardner, as 604(b) evaluator. *Id*. at ¶¶ 4, 15.

Pursuant to Section 604 of the Illinois Marriage and Dissolution of Marriage Act, 750 ILCS 5/101, *et seq.*, the court:

> "may seek the advice of any professional, whether or not regularly employed by the court, to assist the court in determining the child's best interests. The advice to the court shall be in writing and sent by the professional to counsel for the parties and to the court not later than 60 days before the date on which the trial court reasonably anticipates the hearing on the allocation of parental responsibilities will commence. The court may review the writing upon receipt. The writing may be admitted into evidence without testimony from its author, unless a party objects. A professional consulted by the court shall testify as the court's witness and be subject to cross-examination. The court shall order all costs and fees of the professional to be paid by one or more of the parties, subject to reallocation in accordance with subsection (a) of Section 508."

750 ILCS 5/604.10(b).

In her capacity as a court-appointed 604(b) evaluator, Dr. Gardner conducted visits with the parties and collaterals, including house visits, during the preparation of her evaluation report. *See* Ex. A at ¶ 16. Ultimately, Dr. Gardner submitted her report to Judge Barbara Meyer on

January 24, 2012 and recommended that the Court consider granting residential custody to Ex-Wife.

On September 24, 2015, Plaintiff filed a four-count complaint in the Circuit Court of Cook County, Illinois, Case No. 15 L 9735, alleging claims for intentional infliction of emotional distress (Count I), interference with custodial privileges (Count II), civil conspiracy (Count III), and a violation of the ICRA (Count IV).  Plaintiff's Complaint, Exhibit B.  On November 13, 2015, Dr. Gardner filed a Motion to Dismiss all counts of Plaintiff's Complaint.  Defendant's Motion to Dismiss, Exhibit C.  On March 22, 2016, Dr. Gardner filed an amended Motion to Dismiss all counts of Plaintiff's Complaint.  Defendant's Amended Motion to Dismiss, Exhibit D.

On June 2, 2016, Count III and Count IV of Plaintiff's Complaint were dismissed without prejudice.  Circuit Court of Cook County, June 2, 2016 Order, Exhibit E.  On June 30, 2016, Dr. Gardner filed an Answer to Count I and Count II of Plaintiff's Complaint.  Defendant's Answer, Exhibit F.  On November 8, 2017, Plaintiff filed a three-count Amended Complaint re-alleging a claim against Dr. Gardner for violation of the ICRA.  Plaintiff's Amended Complaint, Exhibit G.  On November 22, 2017, Dr. Gardner filed a Motion to Dismiss Count III of Plaintiff's Amended Complaint.  Defendant's Motion to Dismiss, Exhibit H.  Prior to removal of this action, this motion was not ruled upon.

On November 27, 2017, Plaintiff filed a Motion for Leave to File Second Amended Complaint to include a count for alleged civil rights violations under 42 U.S.C. § 1983 and subsequently presented this motion on December 1, 2017.  Plaintiff's Motion for Leave, Exhibit I.  The Court granted Plaintiff's Motion for Leave and deemed the Second Amended Complaint filed *nunc pro tunc* to November 27, 2017.  Circuit Court of Cook County, December 1, 2017 Order, Exhibit J.

In Plaintiff's four-count Second Amended Complaint, he for the first time alleges a claim for discrimination in violation of the Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983. *See* Ex. A. Pertinent to this motion, Plaintiff alleges that Dr. Gardner "while acting under the color of law, unlawfully discriminated against Plaintiff on the grounds of his race (Arab), national origin (Iraq) and gender (Male) in violation of the Fourteenth Amendment of the United States Constitution." *Id*. at ¶ 64.

Dr. Gardner filed a Notice of Removal on December 7, 2017. Notice of Removal, D.E. #1. Dr. Gardner filed an agreed motion for extension of time to file the instant motion to dismiss on December 18, 2017. Agreed Motion for Extension of Time to File Responsive Pleadings, D.E. #9. This Court subsequently granted the agreed motion providing Dr. Gardner until December 29, 2017 to file her responsive pleading. December 19, 2017 Order, D.E. #13. Dr. Gardner moves to dismiss Count III of Plaintiff's Second Amended Complaint in the instant motion because the ICRA claims are so related to Plaintiff's claims under 42 U.S.C. § 1983. 28 U.S.C. § 1367(a).

## **LEGAL STANDARD**

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted. *Hallinan v. Fraternal Order of Police Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

4

## ARGUMENT

**I.  PLAINTIFF CANNOT STATE A CLAIM FOR RELIEF BECAUSE DR. GARDNER IS ABSOLUTELY IMMUNE FROM CIVIL LIABILITY.**

As set forth in Plaintiff's Second Amended Complaint, the case involving the underlying divorce proceedings was assigned to a 604(b) evaluator, Dr. Gardner. *See* Ex. A, ¶ 15. Plaintiff further states that Dr. Gardner conducted 12 visits pursuant to the 604(b) evaluation. *Id*. at ¶ 16. Dr. Gardner conducted five (5) visits involving Ex-Wife, five (5) visits involving Plaintiff, and two (2) visits involving only Daughter. *Id*. By Plaintiff's own admission, Dr. Gardner is a court-appointed evaluator. Thus, Dr. Gardner is entitled to absolute immunity.

Guardians *ad litem* and court-appointed experts, including psychiatrists, are absolutely immune from liability for damages when they act at the court's direction. *See Scheib v. Grant*, 22 F.3d 149, 157 (7th Cir. 1994) (same); *Offutt v. Kaplan*, 884 F. Supp. 1179, 1192-93 (N.D. Ill. 1995) (same); *Hughes v. Long*, 242 F.3d 121, 127-28 (3d Cir. 2001); *Kurzawa v. Mueller*, 732 F.2d 1456, 1458 (6th Cir. 1984). They are arms of the court[1], much like special masters, and deserve protection from harassment by disappointed litigants, just as judges do. *Cooney v. Rossiter*, 583 F.3d 967, 970 (7th Cir. 2009).

In *Cooney*, the plaintiff alleged that the court-appointed psychological evaluator violated the plaintiff's Constitutional rights and intentionally caused her emotional distress by engaging in misconduct. *Id*. at 969-70. The plaintiff further alleged that the plaintiff's ex-husband and the court-appointed psychiatrist were part of an illegal conspiracy to deprive the plaintiff of custody. *Id*. The Seventh Circuit Court of Appeals reasoned that:

> Experts asked by the court to advise on what disposition will serve the best interests of a child in a custody proceeding need absolute immunity in order to be

---

[1] Other federal courts have used the "arms of the court" language in finding immunity because court-appointed evaluators fulfill a "quasi-judicial role at the court's request." *See Hughes v. Long*, 242 F.3d 121, 126 (3d Cir. 2001) (holding that child welfare workers enjoyed "judicial immunity because they acted as 'arms of the court,' similar to a guardian ad litem or a court-appointed doctor or psychologist").

able to fulfill their obligations 'without the worry of intimidation and harassment from dissatisfied parents.'

*Id*. at 970 (quoting *Kurzawa*, 732 F.2d at 1458). Despite the plaintiff's allegations that the guardian ad litem and child psychiatrist were part of an illegal conspiracy and the conclusions in the child psychiatrist's report were false, both individuals were entitled to absolute immunity because the specific acts (actual or alleged) of which the plaintiff complained occurred within the course of their court-appointed duties. *Id*.

Similarly, in *Golden v. Helen Sigman & Associates, Ltd*., 611 F.3d 356 (7th Cir. 2010), the plaintiff alleged that the child representative's actions fell outside the scope of the statutorily defined role because the child representative made false and misleading communications and misrepresented facts. *Id*. at 361. The plaintiff also alleged that the child representative exceeded the scope of her statutory duties by preparing court orders. *Id.* Even assuming the allegations were true, the Seventh Circuit found that the child representative "was still carrying out her responsibilities; those duties centrally include speaking with the relevant actors about the custody proceedings and investigating the facts." *Id*.

Moreover, Illinois state courts have consistently granted immunity to court-appointed representatives in custody proceedings when the representatives act at the direction of the court or within the course of their court-appointed duties. *See Heisterkamp v. Pacheco*, 2016 IL App (2d) 150229, ¶ 11, 47 N.E.3d 1192, 1195, *reh'g denied* (Feb. 24, 2016), *appeal denied*, 60 N.E.3d 873 (Ill. 2016) (psychologist); *Vlastelica v. Brend*, 2011 IL App (1st) 102587, ¶ 29, 954 N.E.2d 874, 882 (Ill. 2011) (child representative); *Davidson v. Gurewitz*, 2015 IL App (2d) 150171, ¶ 16, 48 N.E.3d 1129, 1133, *appeal denied*, 48 N.E.3d 672 (Ill. 2016) (same).

Here, Dr. Gardner was appointed by the court to act as the court's Section 604(b) custody evaluator. Following that appointment, Dr. Gardner was acting at the court's direction in

gathering information, conducting interviews, performing her investigation, preparing her report, and providing her recommendations to the court. Plaintiff has not alleged anything to the contrary. Dr. Gardner was entitled to rely on the court's order and to perform her court-appointed duties without fear that she would be challenged by a dissatisfied parent in a collateral proceeding in which she may be held liable for damages. Dr. Gardner is, therefore, absolutely immune from civil liability.

Dr. Gardner is entitled to absolute immunity from this suit even assuming as true Plaintiff's allegations that Dr. Gardner lied or made false accusations against Plaintiff. In *Vlastelica*, the plaintiff alleged that the child representative stepped outside his court-appointed role when he allegedly: (1) bullied the plaintiff and insisted that she agree to give physical custody of the child to the ex-husband and limit the plaintiff's visitation to four hours per week and every other weekend; (2) chose not to respond to various pleadings or attend certain hearings; (3) chose not to argue the child's best interests relating to the child's desire to swim, engage in religious education, and perform Tae Kwon Do; (4) lied to a court-appointed custody evaluator about the plaintiff being the cause of the litigation; (5) lied to the circuit court about the child's happiness with the current parenting arrangement; and (6) threatened to personally come after the plaintiff if she told the court about how the ex-husband was violating court orders. *Brend*, 2011 IL App (1st) 102587, ¶ 28, 954 N.E.2d 874, 881. The plaintiff argued that because that conduct occurred outside the scope of the defendant's duties as the court appointed child representative, the defendant was not immune from civil liability. *Id.*

The First District Court of Appeals found as a matter of law that the complained-of conduct occurred within the defendant's role as the court-appointed child representative. *Id.* at ¶ 29, 882. The complained-of conduct occurred after the defendant was appointed as child representative and in pursuit of his duties to meet with the parties, investigate the facts of the

7

2437559v.1

case, encourage settlement, and participate in the litigation. *Id.* All alleged misfeasance and malfeasance, therefore, occurred within the course of the defendant's court-appointed duties and was subject to absolute immunity. *Id.*

Absolute immunity, therefore, extends to court-appointed evaluators even if the court-appointed evaluator lies to the court, makes false statements, misrepresents facts, bullies and threatens parties, disregards the child's wishes, et cetera. The focus is, therefore, not on the propriety of the court-appointed evaluator's conduct, but rather on whether the conduct was connected to carrying out the duties of the court appointment.

Plaintiff's criticisms of Dr. Gardner are set forth in detail in Plaintiff's Second Amended Complaint. All of Plaintiff's criticisms against Dr. Gardner, including the alleged bias and discrimination, occurred after her appointment by the court, and all of Plaintiff's criticisms arise from actions or inactions taken by Dr. Gardner in connection with her investigation, formulating her report, and making her custody recommendations pursuant to and within the purview of her Section 604(b) appointment. As a result, similar to *Vlastelica* and *Golden*, all alleged misconduct occurred within the course of Dr. Gardner's court-appointed duties and are subject to absolute immunity. Accordingly, even accepting as true all allegations against Dr. Gardner, she is immune from liability.

II. **EVEN IF DR. GARDNER IS NOT ABSOLUTELY IMMUNE FROM CIVIL LIABILITY, COUNT III OF PLAINTIFF'S SECOND AMENDED COMPLAINT MUST BE DISMISSED BECAUSE ACTIONS BROUGHT PURSUANT TO THE ICRA CANNOT BE MAINTAINED AGAINST INDIVIDUALS.**

Count III of Plaintiff's Second Amended Complaint alleges that Dr. Gardner discriminated against Plaintiff on the grounds of his race, national origin, and gender in violation of the ICRA. Ex. A, ¶ 56.

8

2437559v.1

However, the ICRA provides in relevant part that "**No unit of State**, **county**, **or local government in Illinois** shall: (1) exclude a person from participation in, deny a person the benefits of, or subject a person to discrimination under any program or activity on the grounds of that person's race, color, national origin, or gender; or (2) utilize criteria or methods of administration that have the effect of subjecting individuals to discrimination because of their race, color, national origin, or gender." 740 ILCS 23/5(a)(1), 740 ILCS 23/5(a)(2) (emphasis added).

Thus, by the plain language of the statute, the ICRA does not apply to individuals such as Dr. Gardner. Indeed, Illinois courts have made it clear that the ICRA "provides a cause of action against only three potential parties: the State of Illinois, its counties, and its local governments." *Thorncreek Apartments III, LLC v. Village of Park Forest*, 970 F.Supp.2d 828, 845 (N.D. Ill. Sept. 30, 2013) (quoting *Neuman v. United States*, 2007 WL 3407442, at *3 (S.D. Ill. Nov. 15, 2007)); *see also Matthews v. Hughes*, 2015 WL 5876567, at *6 (N.D. Ill. Oct. 5, 2015).

In *Thorncreek*, a landlord brought a civil rights action against the Village of Park Forest and numerous individuals, officers, and/or agents of the Village alleging that the Village discriminated against the landlord by targeting it for selective enforcement. In its motion for summary judgment, the Village of Park Forest argued that the individual defendants could not be held liable under the ICRA because the statute applies only to a "unit of … local government." *Thorncreek*, 970 F.Supp.2d at 845. The court agreed with the Village and ruled that the ICRA claim could proceed only against the Village. *Id*.

In *Matthews*, the plaintiff brought suit against the Village of Dolton and Dolton Fire Chief Terence Hughes alleging violation of federal and state law in connection with the plaintiff's termination. Hughes moved to dismiss the suit and argued that he was not a proper defendant under the ICRA because the statute does not apply to individuals. *Matthews*, 2015

9

WL 5876567, at *6. The court agreed and dismissed the count alleging an ICRA claim. *Id*. Further, because the "flaw" could not be cured by repleading, the ICRA claim was dismissed **with prejudice**. *Id*. (emphasis added).

Here, because Dr. Gardner did not act as a unit of State, county, or local government in performing her duties as a 604(b) custody evaluator, she cannot be held liable for alleged violations of the ICRA. Therefore, Count III of Plaintiff's Second Amended Complaint fails to state a claim on which relief can be granted.

III. **EVEN IF DR. GARDNER IS NOT ABSOLUTELY IMMUNE FROM CIVIL LIABILITY, COUNT IV OF PLAINTIFF'S SECOND AMENDED COMPLAINT MUST BE DISMISSED BECAUSE DR. GARDNER DID NOT ACT UNDER COLOR OF STATE LAW.**

While Plaintiff's Second Amended Complaint recounts much of the content in the report authored by Dr. Gardner within the course of her court-appointed duties, only one paragraph alleges that Dr. Gardner acted under color of state law. Paragraph 64 provides the conclusory statement that "As described more fully above, Defendant, while acting under the color of law, unlawfully discriminated against Plaintiff on the grounds of his race (Arab), national origin (Iraq) and gender (Male) in violation of the Fourteenth Amendment of the United States Constitution." Ex. A, ¶ 64. Plaintiff's Complaint makes no other allegation that Dr. Gardner is a state actor, nor does it show that Dr. Gardner was acting under the color of state law.

In any 1983 action, the plaintiff must prove that the conduct complained of was committed under color of state law and that "this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Magnuson v. City of Hickory Hills*, 933 F.2d 562, 566 (7th Cir. 1991). Private persons jointly engaged with state officials in a deprivation of civil rights are acting under color of law for purposes of section 1983. *Offutt*, 884 F. Supp. at 1193 (citing *Hooks v. Hooks*, 771 F.2d 935 (6th Cir. 1985)). To

10

2437559v.1

show that a private party acted under color of state law, a plaintiff will have to allege that an individual acted in concert with state action. *Heldstab v. Liska*, 911 F.2d 736 (7th Cir. 1990) (citing *Dennis v. Sparks*, 449 U.S. 24 (1980)); and *Moore v. Marketplace Restaurant, Inc.*, 754 F.2d 1336, 1352-54 (7th Cir. 1985). Section 1983 liability continues to require, at minimum, some overt and significant participation, by the party acting in concert with state action, in the challenged action. *Offutt*, 884 F. Supp. at 1193 (citing *Hoai v. Vo*, 935 F.2d 308, 313 (D.C. Cir. 1991), *cert. denied* by 503 U.S. 967 (1992)).

In the case at bar, Plaintiff has failed to allege factually that Dr. Gardner acted under color of state law. Aside from using the three words "color of law" in one paragraph, Plaintiff does not even suggest that Dr. Gardner, as a private person, engaged with state officials in the alleged deprivation of Plaintiff's civil rights. Plaintiff's Second Amended Complaint contains no allegations that Dr. Gardner acted in concert with state action. The pleadings are clear that, in furtherance of her court-appointed duties, Dr. Gardner conducted a 604(b) custody evaluation independently and thereafter provided her recommendations to the court.

In *Offutt*, the plaintiffs sued a guardian *ad litem*, among other defendants, for alleged violation of the plaintiffs' civil rights in pending custody proceedings in state court. The guardian *ad litem*'s Rule 12(b)(6) motion to dismiss was granted with prejudice because the plaintiffs failed to allege factually that he acted under color of state law[2]. *Offutt*, 884 F. Supp. at 1192. Other federal jurisdictions have similarly held that court-appointed representatives in Dr. Gardner's position are not state actors. *See Arena v. Dep't. of Soc. Servs. of Nassau Cty.*, 216 F. Supp. 2d 146 (E.D.N.Y. 2002) (court-appointed law guardian is not a state actor); *Elmasri v. England*, 111 F. Supp. 2d 212 (E.D.N.Y. 2000) (psychologist who was court-appointed as law

---

[2] The defendant's Rule 12(b)(6) motion to dismiss was also granted with prejudice because, as a guardian *ad litem*, he acted as a judicial officer and was entitled to immunity, and the plaintiffs' allegations were conclusory and not factual. *Offutt*, 884 F. Supp. at 1192-93.

11

guardian for children in matrimonial action not engaged in state action); *Williams v. Bierman*, 46 F. Supp. 2d 1262 (M.D. Fla. 1999) (court-appointed child psychologist who furnished opinion in child visitation and custody case did not act under color of state law).

Here, given the scant and conclusory allegation that Dr. Gardner acted under color of state law, and the lack of any factual allegations whatsoever that Dr. Gardner engaged in or acted in concert with state action, Plaintiff's section 1983 claim must fail as a matter of law.

## CONCLUSION

Dr. Gardner, in her capacity as a court-appointed psychologist, is absolutely immune from civil liability. Additionally, actions cannot be maintained against individuals for alleged violations of the ICRA. Moreover, Plaintiff pleads no factual allegations indicating that Dr. Gardner performed her court-appointed duties under color of state law or as a state actor. Therefore, Dr. Gardner respectfully requests that this Honorable Court grant her Motion to Dismiss Count III and Count IV of Plaintiff's Second Amended Complaint with prejudice.

**Dated**: December 28, 2017

Respectfully submitted,

By:    */s/ Scott D. Hammer*
Scott D. Hammer (ARDC # 6183089)
scott.hammer@wilsonelser.com
Jordan K. Pack (ARDC # 6309852)
jordan.pack@wilsonelser.com
WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP
55 W. Monroe Street, Suite 3800
Chicago, IL 60603
Telephone: 312.704.0550
Fax: 312.704.1522
***Attorneys for Mary K. Gardner***

2437559v.1

**Certificate of Service**

      The undersigned attorney hereby certifies that, on December 28, 2017, he caused the foregoing pleading to be filed with the Court by electronic filing protocols using the CM/ECF system, and that a copy of the same will therefore be electronically served upon all attorneys of record registered with the Court's CM/ECF system.

                                            /s/ *Scott D. Hammer*
                              I declare under penalty of perjury that the foregoing is true and correct. Under 28 U.S.C. § 1746, this statement under perjury has the same force and effect as a sworn statement made under oath.

2437559v.1